IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **Rosemary Hauser** | * | |
| Plaintiff**,** | * | |
| v. | * | Civil Case No. 17-cv-3844-JMC |
| **Mark Powell, et al,** | * | |
| Defendants**.** | * | |

**\* \* \* \* \* \* \***

## MEMORANDUM OPINION AND ORDER REGARDING PLAINTIFF'S MOTION TO EXCLUDE TESTIMONY OF DAVID BUCHHOLZ, M.D.

Plaintiff seeks to exclude Defense Expert David Buchholz, M.D. from testifying at trial, filing a Motion in Limine to that effect with the Court on September 7, 2022. (ECF No. 90). Defendants filed an opposition on September 14, 2022. (ECF No. 95). As set forth more fully below, the Court GRANTS in part and DENIES in part Plaintiff's motion at this stage.

By way of background, Plaintiff seeks damages stemming from a motor vehicle accident in which she sustained head trauma. Plaintiff alleges that she is left with permanent brain disfunction due to mild traumatic brain injury, leaving her with memory problems and other cognitive disfunction. This, in turn, led to past and future lost income and noneconomic damages. Though Defendants do not contest liability for the accident, they contend that Plaintiff did not suffer permanent brain injury and is not entitled to damages.

In support of their defense, Defendants designated Dr. Buchholz to review the records, perform an assessment of Plaintiff, and render opinions regarding the nature and extent of Plaintiff's injury as alleged. In summary, Dr. Buchholz is of the opinion that (1) any head injury Plaintiff sustained in the accident was transient, (2) Plaintiff did not sustain a concussion/mild

traumatic brain injury, and (3) Plaintiff was not left with any residual brain injury that would affect her earning power or any other aspect of cognitive functioning.

At the outset, Defendants argue that Plaintiff's motion to exclude Dr. Buchholz violates an earlier agreement the parties reached whereby Defendants would provide certain financial records of Dr. Buchholz in exchange for Plaintiff withdrawing an earlier version of this motion (ECF No. 62). In reviewing that motion however, it appears to be based primarily on Dr. Buchholz's alleged failure to comply with a subpoena for such records, rather than a substantive attack on his opinions. Because the Court finds that Dr. Buchholz's substantive opinions are largely admissible with limited exception, the Court declines to further interpret the prior agreement of the parties.

In forming his opinion, Dr. Buchholz relies on criteria from the Mild Traumatic Brain Injury Committee of the Head Injury Interdisciplinary Special Interest Group of the American Congress of Rehabilitation Medicine. Dr. Buchholz opines that Plaintiff's ability to recall the accident in detail, including remembering hitting her head and remembering events immediately afterwards, is inconsistent with those criteria because her complaints of lapse of memory and altered consciousness were not "concurrent with and directly, temporally adjacent to the accident itself" but instead were "shortly thereafter in its wake." (ECF No. 90-1 at 17).

Further, relying on literature including the NCAA Concussion Study published in the Journal of the American Medical Association, Dr. Buchholz opines that even if Plaintiff met the criteria for concussion/mild traumatic brain injury, such injuries are "reversible and self-limited" and "are not capable of causing long-term cognitive impairment or other persistent neurological dysfunction years later." *Id.*

Additionally, relying on a long list of medical literature cited in his report, Dr. Buchholz opines that Plaintiff's history of headaches after the accident is not known to correlate with brain

injury, and her history of migraines before the accident are the most likely explanation for her post-traumatic headaches. *Id*. at 18.

As further evidence in support of his opinion that Plaintiff did not suffer any type of permanent brain injury, Dr. Buchholz points to Plaintiff's Emergency Department records immediately after the accident. Dr. Buchholz also points to subsequent records of at least two of Plaintiff's treating neurologists (Drs. Vasquez and Sklar) and an otolaryngologist (treating Plaintiff for complaints of tinnitus and worsening headaches post-accident) which directly inquire into Plaintiff's neurologic and cognitive status. *Id*. at 21.

Plaintiff takes issue with Dr. Buchholz's criticism of the opinions and testing of Dr. Di Dio, who is a treating physician and expert testifying on behalf of Plaintiff. Dr. Buchholz contrasts Dr. Di Dio's findings of permanent brain injury seven months post-accident with the history, findings, and opinions of Plaintiff's previous two treating neurologists and otolaryngologist as described above, among others. Dr. Buchholz also contrasts Dr. Di Dio's findings of permanent brain injury seven months post-accident with some of Dr. Di Dio's other findings, such as his mental status exam of March 16, 2017 which suggest normal cognitive functioning, confirmatory of Dr. Buchholz's opinion. *Id.* at 23-24. As for Dr. Buchholz's opinions regarding the accuracy of the testing performed by Dr. Di Dio, Dr. Buchholz contrasts the results of that testing (showing severe cognitive impairment) with Plaintiff's post-accident history and level of functioning prior to seeing Dr. Di Dio. Dr. Buchholz further recognizes an inconsistency between Dr. Di Dio's findings of permanent brain injury seven months post-accident and the Mini Mental State Evaluation he performed, as well as some of the cognitive test results performed by Dr. Herman. Even if accurate as of that time, Dr. Buchholz also points to several medical articles that question whether later onset post-traumatic deficits can be reasonably linked to the mild traumatic brain

injury Plaintiff claims, as any symptoms from the latter typically resolve within one to three months, according to that literature.

To the extent Plaintiff did experience transient memory loss immediately post-accident, Plaintiff also challenges Dr. Buchholz's alternative diagnosis of transient global amnesia secondary to post-accident exacerbation of pre-existing migraines as being a diagnosis that Dr. Buchholz simply made up. *Id*. at 13.  The Court notes that "transient global amnesia" is actually a finding made by Dr. Vasquez, one of Plaintiff's treating neurologists. *Id*. at 20.  While the Court did not find a direct citation in Dr. Buchholz's report to independent medical literature verifying that migraines are associated with transient global amnesia, such an association was not "invented'" by Dr. Buchholz. *See, e.g.*, *Transient Global Amnesia*, MAYO CLINIC, https://www.mayoclinic.org/diseases-conditions/transient-global-amnesia/symptoms-causes/syc-20378531 (last visited Sep. 12, 2022) (noting that if one has a history of migraines, "your risk of transient global amnesia is significantly higher than that of someone without migraines."); *see also*, Minju Yi et al, *Strong Association Between Migraine and Transient Global Amnesia: A National Inpatient Sample Analysis*, 31 J. NEUROPSYCHIATRY & CLINICAL NEUROSCIENCES 43 (2019).  As an experienced neurologist of more than forty years, Dr. Buchholz is no doubt aware of this association.

Finally, Plaintiff challenges Dr. Buchholz's reliance on the absence of certain findings in Plaintiff's medical records.  The Court's decision here is more nuanced, as its decision will distinguish both between different types of medical providers and also whether the records are *silent* as to cognition versus affirmatively containing normal findings and/or contain information from Plaintiff inconsistent with her current complaint.  This is consistent with *Thompson v. Maryland*, No. PWG-16-2674, 2018 WL 1365850, at *4 (D. Md. 2018), where Judge Grimm

allowed reliance on a post-occurrence medical record to contradict a plaintiff's claim that he lost consciousness, in that the record documented an inquiry as to loss of consciousness and affirmatively recorded plaintiff's statement at the time that he did not lose consciousness.  In his analysis, Judge Grimm noted, "[I]n circumstances where it would be *expected* that a medically significant occurrence (such as loss of consciousness) would be included in a medical record pertaining to the event that led to treatment, then its absence is evidence that there was no such occurrence (loss of consciousness)."  *Id*. (emphasis added).

As for Plaintiff's orthopedic records, including records from Dr. Goradia and Dr. Born, the Court agrees with Plaintiff that the absence of a cognitive complaint in Plaintiff's orthopedic records could be unfairly over-valued by jurors, especially when articulated by an expert witness. To state the obvious, an orthopedic health care provider is not assessing a patient for specific cognitive complaints or functioning, and one would not *expect* such a notation in the records. Additionally, there is no testimony from these orthopedic health care providers affirmatively contradicting this expectation as to their habit of record keeping.  Therefore, Dr. Buchholz will not be permitted to rely on the absence of entries in those orthopedic health care providers' records or to embellish entries establishing that Plaintiff did not relay cognitive complaints to her orthopedic health care providers in support of his opinions.

By contrast, the Court has no concerns with Dr. Buchholz relying on the medical records from other health care providers such as the Emergency Department visit immediately post-accident, neurology visits, or visits to the other health care providers relied upon by Dr. Buchholz in his report who would be expected to (and did) perform some targeted assessment of Plaintiff's cognitive complaints or Plaintiff's cognitive functioning.  Such reliance is customary and, therefore, will be permitted.  Moreover, the records relied on by Dr. Buchholz affirmatively record

findings and/or Plaintiff's description regarding cognition. The Court does not agree under such circumstances that a *negative* finding or a description by Plaintiff inconsistent with her current complaints requires analysis equivalent to an *absence* of a record under Federal Rule of Evidence 803(7).

Thus, as to the substantive opinions offered by Dr. Buchholz as outlined in his report, the Court will not exclude them, except to the limited extent his opinion relied on Plaintiff's orthopedic records as discussed above (and to the extent separately addressed in this Court's upcoming order addressing Plaintiff's Motion in Limine to Exclude Testimony of Attorney Referral which could include Dr. Buchholz if granted). With that limited exception, Plaintiff's Motion is otherwise denied.

The Court does, however, share one final concern raised by Plaintiff: Dr. Buchholz' tendency as shown in his report to comment directly on Plaintiff's truthfulness or motivations. Assertions that Ms. Hauser was feigning symptoms in her evaluation by Dr. Di Dio, or that she was offering a "uniquely reported brand-new history" or adding qualifiers like "supposedly," are not the proper purview of expert testimony. Similarly, his linkage of Plaintiff's history to a "compensation opportunity afforded via an injury claim" is inappropriate. See *Dale v. Jordan*, No. 2:16CV733, 2018 WL 2994825, at *1 (E.D. Va. 2018) (granting motion in limine as to Dr. Buchholz regarding similar language). While it is proper for an expert witness to contrast different statements by a plaintiff at different points in time, or to point out how a description of symptoms on one occasion was inconsistent with test results or a plaintiff's ability to function in daily life, attributing a motive to those differences or suggesting that a plaintiff is therefore not a truthful person is not an area that should be addressed by Dr. Buchholz. Defendants' Opposition suggests that Dr. Buchholz's testimony will be so limited.

Accordingly, Plaintiff's Motion in Limine (ECF No. 90) is GRANTED in part and DENIED in part.

Date: September 14, 2022                              /s/
                                                    J. Mark Coulson
                                                    United States Magistrate Judge